IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED MAY 22 2013

UNITED STATES OF AMERICA, )
ex rel. MIKE AHUMADA, )
 )
 Plaintiff, )
 )
v. ) Civil Action No. 1:06-cv-713
 )
NATIONAL CENTER FOR EMPLOYMENT )
OF THE DISABLED, et al. )
 )
 Defendants. )

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Green Bay Packaging, Inc.'s Motion to Dismiss, Defendant International Paper Company's Motion to Dismiss, Defendant NISH's Motion to Dismiss, Defendant Weyerhaeuser Company's Motion to Dismiss, and Defendant Smurfit Stone Container Corporation's Motion to Dismiss. Also before the Court is Plaintiff's Motion for Leave to File an Amended Complaint.

Relator, Mike Ahumada, filed Counts I through IV of his Complaint on behalf of the United States on June 20, 2006 against his former employer, the National Center for Employment of the Disabled ("NCED"), Robert E. Jones ("Bob Jones") and Defendant Does 1 through 100. The original Complaint alleged Defendants submitted false claims and statements while performing on a government contract, in violation of the False

1

Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1), (a)(2) and (a)(7). The Complaint also alleged unlawful retaliation in Count V against NCED and Bob Jones on his own behalf in violation of the FCA, 31 U.S.C. § 3730(h). The Relator alleged NCED falsely represented to the government that the boxes, containers and sleeves the government purchased were manufactured by severely disabled individuals as required by the Javits Wagner O'Day Act ("JWOD") and NCED benefitted from these false representations by securing lucrative federal contracts to which it was not entitled.

NCED, located in El Paso, TX, participated in a program under the Javits Wagner O'Day Act ("JWOD") wherein NCED had contracts to produce corrugated paper containers for civilian government clients, including the United States Postal Office. The JWOD was enacted to provide employment opportunities for individuals who are blind and/or severely disabled by requiring the federal government to procure certain services and items from "qualified nonprofit agencies." 41 U.S.C. § 48 (2006); 41 C.F.R. § 51-1.1(a)(2006). To be considered a "qualified nonprofit agency" eligible for the JWOD program participation, at least 75 percent of the direct labor hours required to provide the products or services to the government must be performed by severely disabled individuals employed by the nonprofit agency. 41 U.S.C. § 48(b)(4)(c)(2006). During the

time of the alleged fraud, Bob Jones was the Chief Executive Officer and President of NCED.

Further, Relator alleged that NCED falsely represented the costs of the containers to the government by failing to disclose or otherwise concealing information concerning rebates paid by suppliers and by failing to disclose the lowest bids for work and supplies. Over a year later, Relator filed the First Amended Complaint ("FAC") to include five additional named Defendants. Counts I through IV are against all of the Defendants and Count V asserts a claim only against NCED and Bob Jones. In the FAC, the Relator alleges that Green Bay Packaging, Smurfit, International Paper Co., Weyerhaeuser Co. (collectively, the "Manufacturing Defendants"), and NISH (formerly known as the National Industries for the Severely Handicapped) conspired with Jones and NCED to "present false claims, and or otherwise caused false claims to be presented to the United States for payment." Relator alleges the containers provided to NCED by the Manufacturing Defendants were not manufactured by the severely disabled as required by the JWOD and that because the containers were pre-printed with NCED's Box Manufacturing Certificate, the containers "falsely represented that NCED made the boxes, and therefore falsely represent[ed] that 75% of the direct labor that went into making the boxes was performed by severely disabled workers." Among other

3

allegations, Relator claims the Manufacturing Defendants "fabricated complete or nearly complete containers for NCED" but "issued false invoices to NCED for 'raw sheet' of corrugated cardboard…"

Accordingly, the United States intervened regarding some, but not all, of the claims against NCED and Bob Jones and declined to intervene as to the remaining Defendants in September of 2012. After a settlement agreement between the United States, Defendants NCED and Bob Jones, and the Relator, the Court ordered the United States to submit an Order of Dismissal as to NCED and Bob Jones. Thereafter, the FAC was served upon the remaining parties.

Defendant Green Bay Packaging, Inc. ("GBP") filed a motion to dismiss the FAC pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted under the False Claims Act, 31 U.S.C. § 3729-32 et. seq., and failure to plead the circumstances of the alleged fraud with particularity. Counts I-IV of the FAC are asserted against GBP. GBP is a privately held manufacturer of paperboard packaging that supplied products to NCED whom allegedly, along with the other Defendants, conspired to present false claims and/or otherwise caused false claims to be presented to the Government for payment.

Likewise, Defendant RockTenn CP, LLC, formerly known as Smurfit Stone Container Corporation ("Smurfit") filed a Motion to Dismiss the FAC for failure to state a claim under the FCA because the FAC fails to plead fraud with the particularity required by Rule 9(b). In addition, Smurfit asserts this Court lacks subject matter jurisdiction over the claims because they are precluded by the public disclosure bar of the FCA, 31 U.S.C. § 3730(e)(4). Defendant NISH also agrees the FAC should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction under the FCA's public disclosure bar because the allegations against them are clearly derived from prior public disclosures. Namely, newspaper articles from *The Oregonian* and the *El Paso Times* and a civil complaint that NCED filed against NISH in Texas state court which all appeared in the public domain before the Relator amended the Complaint in June 2007 to add the additional named Defendants. NISH also asserts the heightened pleading standard of Rule 9(b) has not been met and the FAC cannot survive a motion to dismiss.

Defendant Weyerhaeuser Company ("Weyerhaeuser") moves this Court to dismiss the FAC pursuant to 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure as well. Defendant International Paper Company ("International Paper") moves to dismiss the FAC for the same reasons.

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations, although assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While the Court must construe the FAC in the Relator's favor, accepting all factual allegations and inferences as true, the FAC must assert more than bare legal conclusions. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Taubman Realty Grp. L.P. v. Mineta*, 320 F.3d 475, 479 (4th Cir. 2003). Furthermore, lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84, n.5.

A relator must plead four essential elements to state a claim under the FCA: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite intent, *i.e.*, with actual knowledge or deliberate ignorance or reckless disregard of the truth or falsity of the information; (3) that was material; and (4) caused the government to pay out money or forfeit money due. *Id.* at 788. A FCA action is an action in fraud, and thus a relator must comply with the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil

6

Procedure. The relevant portion of Rule 9(b) provides "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The facts required to sufficiently plead with particularity "are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). The relator must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citation omitted). Moreover, "when a defendant's actions, as alleged and as reasonably inferred from the allegations could have led, but need not necessarily have led, to the submission of false claims, a relator must allege with particularity that specific false claims actually were presented to the government for payment." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, No. 11-2077, 2013 U.S. App. LEXIS 765, at *11-12 (4th Cir. Jan. 11, 2013). "Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the 'circumstances constituting fraud or mistake' that must be pled with particularity pursuant to Rule 9(b). *United States ex rel. Elms v. Accenture LLP*, 341 F. App'x 869, 873 (4th Cir. 2009).

Additionally, in FCA cases with multiple defendants, Rule 9(b) requires that a complaint set forth with particularity each defendant's culpable conduct. *Accord, Apple v. Prudential-Bache Securities, Inc.*, 820 F. Supp. 984, 987 (W.D. N.C. 1992) *aff'd* 993 F.2d 228 (4th Cir. 1993). Defendants cannot simply "be grouped 'together without specification of which defendant committed which wrong.'" *Arnlund v. Smith*, 210 F. Supp. 2d 755, 760 (E.D. Va. 2002) (quoting *Apple*, 820 F. Supp. At 987); *see also Ironworkers Local 16 Pens. V. Hilb, Rogal & Hobbs*, 423 F. Supp. 2d 571 (E.D. Va. 2006) (citing *Juntti v. Prudential-Bache Securities, Inc.*, Civ. No. 92-2066, 1993 U.S. App. LEXIS 10345, at *2 (4th Cir. May 3, 1993). "[W]hen a relator raises allegations of fraud against multiple defendants, the complaint must apprise each defendant of the specific nature of his or her participation in the fraud." *Apple*, 820 F. Supp. At 987.

In Count I, the Relator alleges that "All Defendants," without specifically naming any Defendant, knowingly presented, or caused to be presented, false claims in violation of 31 U.S.C. § 3729(a)(1). Stripped of conclusory allegations, Count I fails to set forth a plausible suggestion that a specific Defendant submitted, or caused to be submitted, any false claims. The FAC also fails to plead any detailed allegations against GBP, much less allegations sufficient to inform GBP against what fraudulent act it is to defend. Count I makes

8

general assertions against all of the Manufacturing Defendants without specifics of each Defendant's alleged conduct and provides no insight into the specific culpable conduct accused of. Relator provides zero specifics regarding the false claims he alleges the Manufacturing Defendants "caused, and/or conspired to cause" beyond conclusory assertions. These generalized allegations against multiple parties are insufficient to meet the particularity requirements of Rule 9(b).

In addition to failing to identify the "who" of the alleged fraud by grouping the Manufacturing Defendants together, the Relator fails to allege the "what, when, where, and how" of the false claims he alleges the Manufacturing Defendants submitted, or caused to be submitted, to the Government. *See Wilson*, 525 F.3d at 379. The FAC is devoid of any particularized facts. Not a single employee, specific communication, the specific products shipped, or a specific invoice that was submitted to the Government is mentioned.

Relator generally and conclusory alleges that the Manufacturing Defendants provided NCED with (1) false invoices for raw sheets when they were actually supplying nearly final products; (2) false invoices inflating the price of the containers and not disclosing price rebates; and (3) containers falsely marked with NCED's Box Manufacturing Certificate. The

FAC provides no details such as the dates the claims were submitted, the government agencies to which the claims were submitted, the identity of the Manufacturing Defendant that produced the containers in question, the content of the forms or the bills submitted, and the amounts of money charged to the government. While Relator claims to have such information, he fails to allege specific facts to support his allegations and therefore the FAC must be dismissed.

Relator also fails to state a claim because he does not allege scienter, which is an essential element of any FCA claim. *Harrison*, 176 F.3d at 788. A relator must allege that the defendant's violations were committed "knowingly" - with actual knowledge that the information was untrue or with deliberate ignorance or reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b) (2006). Although intent may be alleged generally, the relator must still plead specific facts supporting an inference of fraud. *Wilson*, 525 F.3d at 379. Relator alleges no facts from which a fact finder could infer for example that Weyerhaeuser or any other named Defendant knowingly made a false statement or engaged in a fraudulent course of conduct. Relator fails to show that the Manufacturing Defendants knew that NCED was selling containers to the Government under JWOD contracts, that they knew NCED was required to comply with JWOD's direct labor requirement, nor

that NCED was out of compliance with the direct labor requirement. Accordingly, Counts I through IV should be dismissed. Relator also fails to allege that any contract required the disclosure of rebates that NCED received from its suppliers nor any contract term requiring the disclosure of rebates to sufficient to show that NCED was in fact required to disclose rebates to the government.

Furthermore, to plead a conspiracy under 31 U.S.C. § 3729(a)(3), Relator must allege with particularity facts (1) to support the formation of an unlawful agreement between the conspirators to get a false claim paid, and (2) at least one overt act in furtherance of the conspiracy. *See United States ex rel. Godfrey v. KBR, INC.*, 360 F. App'x 407, 413 (4th Cir. 2010); *Harrison*, 176 F.3d at 790. The conspirators must also have "agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 349 (4th Cir. 2009). Relator merely repeats sporadically throughout the FAC the conclusory assertion that there was a conspiracy therefore Count III should also be dismissed.

At the time the Relator brought suit in 2006, the FCA provided that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of

11

allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing audit, or investigation, or from the news media unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A)(2006). This provision, also known as the public disclosure bar, is designed "to prevent 'parasitic' *qui tam* actions in which relators, rather than bringing to light independently-discovered information of fraud, simply feed off of previous disclosures of government fraud." *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1347 (4th Cir. 1994). This public disclosure bar removes subject matter jurisdiction from the Court. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 468 (2007).

Once a motion to dismiss on jurisdictional grounds is filed, the relator bears "the burden of proving by a preponderance of the evidence" that the allegations are not based upon public disclosures. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (citing *Rockwell*, 549 U.S. at 468). If the relator carries this burden, the public disclosure bar does not apply. *Id.* If the relator fails to carry the burden, he must bear the separate burden of proving that he is an "original source." To qualify as an original

source the relator must show (1) direct and independent knowledge of the information on which the allegations are based, and (2) which he voluntarily provided to the Government before filing an action under this section. *Id.*; 31 U.S.C. § 3730(e)(4)(B)(2006). Accordingly, a Rule 12(b)(1) dismissal of a relator's suit is proper if the *qui tam* complaint is: (1) "based upon" information that was "publicly disclosed;" and (2) the relator was not the "original source" of such information. *Grayson v. Advanced Mgmt. Tech., Inc.*, 221 F.3d 580, 582 (4th Cir. 2000) (citing *Siller*, 21 F.3d at 1346-47).

The public disclosure bar "encompasses actions even partly based upon prior public disclosures" and FCA allegations are "based upon" a public disclosure where the allegations are "actually derived from" the disclosure. *Vuyyuru*, 555 F.3d at 350-51. Such public disclosures include news articles. 31 U.S.C. § 3730(e)(4)(A) (2006); *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 569, 591 (E.D. Va. 2011). In order to avoid the FCA's public disclosure bar, Relator must allege specific facts demonstrating his qualifications as an "original source." *See United States ex rel. Detrick v. Daniel F. Young, Inc.*, 909 F.Supp. 1010, 1019-20 (E.D. Va. Dec. 18, 1995). In order to qualify as an "original source", a relator must show that he has "direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. §

13

3730(e)(4)(B)(2006). A "relator's knowledge is 'direct' if he acquired it through his own efforts, without intervening agency, and it is 'independent' if the knowledge is not dependent on public disclosure." *Grayson*, 221 F.3d at 583 (quoting *Detrick*, 909 F. Supp. At 1016).

Starting in November 2005, the *El Paso Times* – NCED's local newspaper – published several articles about NCED and its non-compliance with the JWOD requirements. These articles publicly disclosed that Smurfit had provided corrugated boxes to NCED and suggested that NCED violated the FCA by subcontracting with Smurfit to produce boxes ultimately for the Government. Employees of NCED and the various Manufacturing Defendants were named and quoted in the article such as NCED's former design and customer service manager of the box plant, Jesse Cruz, and Tom Lange, the corporate spokesman for Smurfit. The stamping scheme was described in the article as well as naming the Manufacturing Defendants specifically. Another article was published December 6, 2005 by the *El Paso Times*, again discussing NCED violating the JWOD program.

In addition to the *El Paso Times* articles that specifically mention Smurfit, International Paper, and GBP's involvement, the *Oregonian* ran a series of investigative articles on the JWOD program and NCED's violations. It was not until months later on June 20, 2006 that Relator filed his original Complaint in this

14

matter against NCED and Bob Jones. Approximately one year later, on June 29, 2007, the Relator filed his FAC under seal which added the Manufacturing Defendants and NISH. The allegations clearly track the news media stories and the public disclosure clearly appears to be the basis of Relator's claim, thus placing the burden on the Relator to show that he is the "original source" of this information.

The Relator fails to allege specific facts demonstrating that his knowledge of the claims asserted against the Manufacturing Defendants and NISH is either direct or independent. Relator's conclusion that he qualifies as an original source in paragraphs 30, 99, and 100 of the FAC fails to satisfy the heightened pleading requirement of Rule 9(b). *Detrick*, 909 F. Supp. At 1019-20. For Relator's knowledge to be direct and independent he must show for example that Defendants supplied containers to NCED while the Relator was actually employed at NCED. *Vuyurru*, 555 F.3d at 352. Relator was only employed at NCED for approximately six months and there are no suggestions in the FAC as to how Relator acquired personal knowledge of the allegations "through his own efforts, without intervening agency" and that he was "not dependent on public disclosure." *Grayson*, 221 F.3d at 583. If Relator did in fact have direct and independent knowledge, all the allegations would not be as generalized.

In fact, each of the allegations regarding NISH appear to have been lifted almost verbatim from the March 5, 2006 article in the *Oregonian*, which was published well over a year before the Relator filed the FAC. A side-by-side comparison of the material factual allegations in the FAC and the 2006 article is illustrative of the "remarkable similarities" between the two documents. The FAC states, "From 2000 to 2004, commissions from contractors helped boost NISH's revenue 86% percent [sic], to $58 million in 2004." The relevant portion of the article states, "The commissions helped boost NISH's revenue 86 percent over four years, to $58 million in 2004." Before the Relator filed his FAC in 2007, other publicly disclosed materials such as articles in the *Oregonian* and *El Paso Times,* and a civil complaint NCED filed against NISH in Texas state court, also demonstrate the factual allegations of the FAC were widely known. One such example from the *El Paso Times* article from January 24, 2006 mentions NISH's compliance reviews, stating that NCED spokesman, Marc Schwartz "offered a detailed explanation of why discrepancies are not arising after years of NISH audits showing NCED to be fully compliant with requirements regarding work by severely disabled employees." Relator proceeds from the core factual allegations to make bald, generalized, conclusory assertions that NISH, purportedly "knowing" of NCED's noncompliance with the JWOD labor

16

requirements, caused to be submitted or conspired with NCED to submit NCED's false claims. Section 3730(e)(4) clearly withdraws jurisdiction over actions even partly derived from prior public disclosures.

Here again, regarding allegations against NISH, the Relator's knowledge is neither direct nor independent. Relator was employed at NCED in 2004 for approximately six months yet he does not allege that any of the NISH compliance reviews, failures to recommend NCED's expulsion from JWOD, or fee payments from NCED occurred during that time. Therefore he could not be the original source of the fraud allegations in this case because he was not working for the company at that time. *Vuyurru*, 555 F.3d at 352. Nothing in the FAC suggests how the Relator acquired, or could have acquired, personal knowledge of his allegations or how Relator's job duties could have put him in a position to learn of them.

Also before the Court is Plaintiff's Motion for Leave to File a Second Amended Complaint. Relator seeks to file his Second Amended Complaint five and a half years after the FAC and six and a half years after he originally filed this case, and only after Defendants each filed their motions to dismiss the FAC in its entirety. The proposed Second Amended Complaint still fails to cure the deficiencies indicated above in the FAC and therefore this motion should be denied as futile. The

specific details added to the proposed Second Amended Complaint are all information that can be found in the public domain and do not evidence that Relator was in fact the original source of the information. The Proposed Second Amended Complaint is likewise based upon a public disclosure and this Court lacks subject matter jurisdiction.

For the reasons stated herein, Defendants' Motions to Dismiss the First Amended Complaint should be granted. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
May 22, 2013